IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff(s),<br><br>vs.<br><br>RICHARD JAMES JACKSON,<br><br>    Defendant(s). | 4:15-cr-00060-JAJ-HCA<br><br><br><br>REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS |

This matter is before the Court on defendant's motion to suppress [38] filed April 12, 2016. The government has filed a resistance [40]. Defendant has filed a reply [43] and Supplemental Authority [44]. The motion was referred to the undersigned for report and recommendation. Hearing was held on April 28, 2016. Jury trial is scheduled to begin May 17, 2017 before Chief Judge Jarvey.

## I.  BACKGROUND

After pleading guilty to a charge of failure to register as a sex offender in violation of 18 U.S.C. § 2250(a) in case 4:13-cr-00125-JAJ-CFB, on February 21, 2014 defendant was sentenced to a twenty-one month term of imprisonment to be followed by five years of supervised release under specified conditions. One of the Special Conditions is as follows:

> The defendant shall submit to a search of his person, residence, adjacent structures, office or vehicle, conducted by a U.S. Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the residence or vehicle may be subject to searches pursuant to this condition. This condition may be invoked with or without the assistance of law enforcement, including the U.S. Marshals Service.

(Judgment [63] at 2-4). Mr. Jackson served his prison term at USP Tucson, Arizona. (*Id.* [64]).

Mr. Jackson's supervised release term commenced February 27, 2015 at the Fort Des Moines Correctional Facility ("Fort Des Moines"), a residential re-entry program intended to facilitate defendant's re-entry into the community. Residents entering the facility are provided a Resident Manual which defines the rules and regulations governing their conduct at the facility.[1] The rules are also read to an inmate when he begins his residency.  Federal inmate residents are advised of the rules of the facility an additional time when they meet with their intake counselor. Those rules prohibit possession of cell phones within the secure facility walls. Resident cell phones are considered contraband if found within the secure area. Lockers for the residents' personal property (including cell phones) are provided in the entrance lobby but no cell phones are permitted beyond that area.  At hearing witnesses Mike Schneider and Phillip Hotchkiss, both state probation officers employed at the facility, testified there are multiple signs notifying all persons entering the grounds and the facility itself that any item brought on the premises is subject to search.

Jackson's cell phone was confiscated as contraband when found in the secure facility area on two occasions which are pertinent to the present motion.  PO Schneider testified Jackson had a cell phone within the facility on March 16 which was confiscated. Schneider released the cell phone back to Jackson without searching it, warning Jackson this was his first violation and that upon a second violation the cell phone would be confiscated, searched and not returned until Jackson left the facility.

On March 21, 2015 staff at the facility found Jackson's cell phone in the possession of another resident, Fisher, within the secure facility. Both Jackson and Fisher admitted the phone belonged to Jackson. (Pl. Ex. 1). Jackson gave facility staff his passcode and they looked at the

---

[1] The Resident Manual was not offered as an exhibit during the suppression hearing but witnesses testified about the pertinent rules.

data on his phone. During their inspection they found pornographic images and videos, including pictures of "what appeared to be underage girls Offender Jackson was attempting to talk to." (*Id.*) Facility staff also looked at the internet history on the phone and found it full of different types of pornography and a teen-chat site. (*Id.*) Both Jackson and Fisher were interviewed about how Fisher had used the phone and both agreed Fisher had only used it to talk to his wife. (*Id.*) Facility staff also looked at text messages on Jackson's phone and found the names of two state sex offender residents with whom it appeared Jackson had exchanged/received pornography. (*Id.*) Both state offender residents were placed on lock down and reports were written. (*Id.*)

On March 22, 2015 U.S. Probation Officer Casey Ritchie, Jackson's supervising officer, received a call from Jackson about the confiscation of his cell phone. Ritchie testified Jackson told him staff at the facility was going to search the cell phone and that they would find sexually inappropriate material on the phone. Ritchie told Jackson they would discuss it further.

On March 23, 2015 PO Schneider used Jackson's passcode and looked at the contents of the phone. He also observed many types of pornography on the phone in the form of chats, videos, pictures and "explicit stories". When PO Schneider came upon pictures that appeared to be younger females, he stopped, put the cell phone in an evidence bag, and contacted USPO Ritchie. Ritchie memorialized the information received from Schneider in a "chrono log," describing Schneider's observations of the internet content and noting he asked Schneider to discontinue the search. (Ex. 2).

With Senior USPO Dietch, on the afternoon/evening of March 23, 2015 USPO Ritchie went to Fort Des Moines to follow up, meeting with PO Schneider. (Ex. 3). Ritchie received the cell phone and passcode from Schneider. Ritchie first searched Jackson's Facebook page on the phone for violations. Finding none, Ritchie then looked at Jackson's internet history, finding

mostly pornographic sites. An initial search of one site appeared to be underage females. (*Id.*) Ritchie took a picture of the site and discontinued his search, putting the phone in an evidence bag. (*Id.*)

As memorialized in Exhibit 3 and testified to a hearing, Ritchie met with Jackson in the presence of PO Schneider and SUSPO Dietch and told Jackson he was confiscating the phone "based on reasonable suspicion that some of the images/materials appears to be of minor females." (Ex. 3). Jackson consented to the search and asked what Ritchie had found. Ritchie testified he told Jackson the titles of websites that were "concerning" and Jackson only denied visiting the Teen Chat site. He continued to consent to search of the phone by Ritchie and law enforcement and said everything on the phone was legal. He admitted to being on a chat website "meet24.com" talking with another individual about sex. The "other person" asked Jackson if he wanted some pictures and the "other person" sent Jackson nine to ten pictures of child pornography. (*Id.*) Jackson said he deleted the pictures and the website and again consented to search of the phone. (*Id.*) Upon the direction of another senior USPO, Ritchie returned to his office with the phone and locked it up in a probation office safe. (*Id.*) At hearing Ritchie testified he did not first obtain Jackson's consent before his initial search of the cell phone nor did he seek to have a warrant obtained before undertaking the search. Ritchie obtained the passcode for the cell phone from PO Schneider and conducted the search based on reasonable suspicion that Jackson had violated the rules of his halfway house placement and the condition of his supervised release that he commit no other law violations.

Phillip Hotchkiss, a probation officer at Fort Des Moines, was called by the government to testify about his involvement with the second cell phone incident on March 21, 2015. Hotchkiss testified he was at the desk at the Fort Des Moines when Jackson and Fisher approached him about

Jackson's cell phone, which was in staff possession. Jackson said it was his cell phone. Hotchkiss testified he talked to Jackson about getting Jackson's passcode for the cell phone, telling Jackson he would search the phone. Jackson did not object and gave Hotchkiss the passcode. Upon entering the passcode and examining the phone, Hotchkiss saw many pornographic pictures and inappropriate sites, leading him to call Schneider and report his findings. Hotchkiss confirmed that inmates are advised repeatedly of the rules of the facility and that they receive a breath test and pat-down search whenever they enter the facility. Hotchkiss also testified that if staff found an item which violated the rules it would be searched. He did not get a search warrant before looking at the contents of the cell phone.

On April 1, 2015 the government subsequently presented an application and obtained a warrant to search Jackson's cell phone further. (4:15-mj-00086-CFB [1][2]).

In the meantime on April 2, 2015 Jackson was arrested on state charges for failing to comply with the Sex Offender Registry (after he was on the premises of the local public library without written permission of the library administrator) and ended up in state custody. (4:13-cr-00125-JAJ-CFB [69]). Based on the March 21-23 phone incident at Fort Des Moines, a petition to revoke Jackson's supervised release was filed in 4:13-cr-00125-JAJ-CFB on April 2, 2015 [69]. On May 27, 2015 Jackson was charged in the present case with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) (Count 1) [1]. Initial appearance on the petition to revoke and initial appearance and arraignment on the indictment were held on September 28, 2015. Jury trial is currently set for May 17, 2016.

## II.  ANALYSIS

In his motion and at hearing, defendant argues the warrantless search of his cell phone by Fort Des Moines staff was a violation of his Fourth Amendment privacy rights, citing to *Riley v.*

5

*California*, 573 U.S. __, 134 S. Ct. 2473 (2014), and urges all evidence obtained from that search should be suppressed. The government resists, arguing the search of the cell phone did not violate the Fourth Amendment because as a federal supervisee who was subject to a special condition of release permitting search based on reasonable suspicion, as well as his status as a resident of a facility the rules of which advised contraband was subject to seizure and search at any time, Jackson had a diminished expectation of privacy and facility staff had the requisite reasonable suspicion to search without a warrant. In his reply, defendant distinguishes the cases upon which the government relies and argues that while the officers at Fort Des Moines may have been justified in seizing Jackson's cell phone as contraband, they had no justification to search the data on it. (Reply [43] at 4).

In *Riley* the United States Supreme Court held that in the context of a search incident to arrest, law enforcement must obtain a warrant before undertaking a search of a cell phone. 573 U.S. at __, 134 S. Ct. at 2495. Referencing *Riley* in dicta the Eighth Circuit has noted that " [t]he Supreme Court established that, unless certain exceptions apply, police generally may not conduct a warrantless search of digital information on a cell phone seized from an arrestee's body." *Basham v. United States*, 811 F.3d 1026, 1028-29 (8th Cir. 2016).  Defendant argued that none of the factors which might justify a warrantless search under *Riley*, jeopardy to the safety of officers or likely destruction of evidence, was present, thus the search was not proper under the Fourth Amendment. Defense counsel directed the Court to a recent Ninth Circuit opinion in which that court referenced *Riley* and held the search of the data on a probationer's cell phone was unreasonable under the Fourth Amendment, *United States v. Lara*, 815 F.3d 605 (9th Cir. 2016).

As the government points out in its resistance, the present situation does not involve a search incident to arrest, instead it involves the search of the cell phone of a convicted defendant

6

serving a term of supervised release under special conditions of release as well as the regulations of the halfway house facility in which he was placed. Citing to *United States v. Knights*, 534 U.S. 112, 119-20 (2001), the government argues that Jackson had a diminished expectation of privacy and that the residential facility probation officers did not have to obtain a warrant based on probable cause before conducting a search of Jackson's cell phone. At hearing the government directed the Court to another case out of the Tenth Circuit, *United States v. Huart*, 735 F.3d 972 (10th Cir. 2013), in which that circuit held a federal prisoner at a halfway house did not have an expectation of privacy in the contents of his cell phone based on his knowledge of the halfway house rules which advised him all belongings would be searched and that he was not permitted to have a cell phone.

*Knights* involved the search of a probationer's apartment after officers investigating an arson case developed information which led them to suspect the probationer was involved. One of the conditions of Knights' probation was that he would submit his "person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer." *Id.* at 114, 122 S. Ct. at 589. Knowing of this condition, officers believed they did not need a warrant to search Knights' apartment. *Id.* at 115, 122 S. Ct. at 589. They found materials which could be used for arson and a brass padlock from the site where the fire in question had been set. *Id.* Knights was arrested and indicted for conspiracy to commit arson and related charges. *Id.* at 116, 122 S. Ct. at 589-90. In moving to suppress the evidence obtained as a result of the search, Knights argued that the search condition of his probation was limited to those with a "probationary purpose." *Id.*, 122 S. Ct. at 590. The Supreme Court held that a warrantless search of Knights' apartment, when supported by "reasonable suspicion" and authorized by a condition of his probation, was

reasonable and "constitutionally sufficient" under the Fourth Amendment. *Id.* at 121-122, 122 S. Ct. at 593. The twin concerns regarding a search incident to an arrest involved in *Riley* were not at issue, instead the twin concerns of "rehabilitation and protecting society from future criminal violations" informed the Supreme Court's decision. *Id.* at 119, 122 S. Ct. 591.

Following up on *Knights*, the Eighth Circuit upheld a warrantless search of a parolee's trailer by parole officers as the parolee's conditions of parole included one permitting search by parole officers based on reasonable suspicion and under the circumstances the officers had reasonable suspicion to continue a search of his trailer, including an image scan of the parolee's laptop and a CD, after they saw beer cans thrown inside around the trailer, a violation of an alcohol abstention parole condition. *United States v. Hamilton*, 591 F.3d 1017, 1023 (8th Cir. 2010). In this district, Judge Rose has noted that federal supervisees "enjoy the least amount of privacy," also applying *Knights* reasonable suspicion standard to a Fourth Amendment challenge to a warrantless search of a USB drive by defendant's probation officer. *United States v. Makeef*, 4:14-cr-00081-SMR-CFB, Order on Defendant's Motion to Suppress [48] at 8 (S.D. Iowa February 6, 2015). In a decision entered April 29, 2016 the Eighth Circuit affirmed Judge Rose's decision. *United States v. Makeef*, __F.3d __, 2016 WL _____ (8th Cir. April 29, 2016).[2] Even the *Lara* court cited by defendant applied the *Knights* standard to the search at issue, acknowledging the probationer's diminished expectation of privacy but finding that the reason for searching the probationer's cell phone, that he missed a meeting with his probation officer, was "worlds away from the suspected crimes that prompted the searches in . . . *Knights*." 815 F.3d at 612. Under the circumstances here, the Court follows the "reasonable suspicion" analysis of *Knights, Hamilton* and *Makeef*.

---

[2] Neither Judge Rose nor the Eighth Circuit referred to *Riley*.

"[T]he reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Knights*, 534 U.S. at 118-119, 122 S. Ct. 591 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999))."Reasonable suspicion exists when, considering the totality of the circumstances known to the officer at the time, the officer has a particularized and objective basis for suspecting wrongdoing." *Hamilton*, 591 F.3d at 1022 (citing *United States v. Henry*, 429 F.3d 603, 609-10 (6th Cir. 2005) and *United States v. Baker*, 221 F.3d 438, 444 (3d Cir. 2000)).

In the present case, Jackson was serving a term of federal supervised release at a re-entry facility. He served under certain conditions of supervised release which required him to submit to search of "person, residence, adjacent structures, officer or vehicle, conducted by a U.S. Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release." Additionally, the facility at which he was placed, and whose rules he was required to follow, had rules concerning the possession of cell phones and where residents/inmates may have them. Jackson was advised of these rules at least twice and there were multiple signs at the facility advising all entering that all items on the premises were subject to seizure and search.  In this status, Jackson clearly had a diminished expectation of privacy, although he was still entitled to some Fourth Amendment protection. That protection arose in the constitutional "reasonable suspicion" standard applicable under the search provision in the conditions of his release, at least to any search by his probation officer. The question is whether that standard should also apply to staff at the Fort Des Moines. The Court believes under the circumstances here facility staff was also governed by "reasonable suspicion." "'[T]he very assumption of the institution of probation" is that the probationer 'is more likely than

the ordinary citizen to violate the law.'" *Knights*, 534 U.S. at 120, 122 S. Ct. at 592 (quoting *Griffin v. Wisconsin*, 483 U.S. 68, 880 (1987)). Like the probation officers in *Knights*, the staff at Fort Des Moines have a serious interest in making sure the supervisees/probationers/parolees under their supervision are not engaging in criminal conduct or violating the rules of the facility. The Court believes the "reasonable suspicion" standard applies to searches by the staff at Fort Des Moines.

Applying that standard, it is undisputed Jackson was aware of all the rules governing his supervised release and the Fort Des Moines rules. Within two weeks after his placement at Fort Des Moines on March 16, 2015 he had already broken the facility's cell phone rule. No search was conducted at that time but he was advised a second violation could lead to one. Approximately a week later he was involved in *another* rule violation involving cell phones. Staff was presented with a resident/inmate who had violated the cell phone rules twice in two weeks, shortly after his release from prison for failing to register as a sex offender. The second incident involved another offender, who also was aware of the rules. These are the operative facts which the Court reviews, not what occurred afterward or the results. Viewing these facts, staff had a "particularized and objective basis to suspect" Jackson was engaged in criminal conduct of some nature, *Hamilton*, 591 F.3d at 1022, justifying a warrantless search under the *Knights* standard.

The government has shown there was reasonable suspicion for a warrantless search of Jackson's cell phone by Fort Des Moines staff. Even if the special search condition in Jackson's condition of supervised release does not control, the staff had a significant interest in preventing criminal conduct by offenders under their supervision and in maintaining compliance with the rules of the facility. Defendant is not entitled to the relief he seeks.

IT IS RESPECTFULLY RECOMMENDED that defendant's motion to suppress [38] be **denied**.

IT IS ORDERED that the parties have until **May 6, 2016** (at the hearing the parties stipulated to a 48 hour period to file any objections to the Report and Recommendation) to file written objections to the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1). *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Wade for Robinson v. Callahan*, 976 F. Supp. 1269, 1276 (E.D. Mo. 1997). Any objections filed must identify the specific portions of the Report and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections. *See* Fed. R. Civ. P. 72; *Thompson*, 897 F.2d at 357. Failure to timely file objections may constitute a waiver of plaintiff's right to appeal questions of fact. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994); *Halpin v. Shalala*, 999 F.2d 342, 345 & n.1, 346 (8th Cir. 1993); *Thompson*, 897 F.2d at 357.

Dated this 4th day of May, 2016.

_____
HELEN C. ADAMS
UNITED STATES MAGISTRATE JUDGE